PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* RODOLFO CHARDÓN, Defendant and Appellant.

No. 4799. Argued February 7, 1933.—Decided February 10, 1933.

*R. Hernández Matos* for appellant. *R. A. Gómez, Fiscal,* for appellee.

Mr. Justice Córdova Dávila delivered the opinion of the Court.

Rodolfo Chardón was found guilty by the District Court of Ponce on a charge of aggravated assault and battery, and was sentenced to three months' imprisonment in jail, and to pay a fine of $100. The defendant appealed, and in his brief he urges that the lower court erred in giving no credence to the witnesses for the defense, and in believing those for the prosecution; in taking judicial notice of the deadly character of the weapon used to commit the assault; and in imposing an excessive punishment.

The first two errors relate to the weighing of the evidence. The witnesses for the prosecution testified that the defendant and the person assaulted are brothers; that the relations between the defendant and his family had become seriously strained since before the date of the accusation; that on the day of the assault the defendant was living on a plantation belonging to the Heirs of Chardón; that on this plantation Julio Chardón, brother of the defendant, and a contractor for wells, kept some pipes and implements that he used in drilling; that the pipes and implements belonged to him; that on the day mentioned, Julio Chardón, and his brother Juan Bautista Chardón, who was the person assaulted, appeared with two workmen in a truck that they had brought to take away the pipes and implements; that it was about 9 o'clock in the morning of March 21, 1931; that they reached the entrance to the plantation and, leaving the truck with the workmen, Juan Bautista and Julio Chardón descended and entered the plantation to inspect and remove the pipes; that the dwelling in which the defendant was living is located at a short distance from the entrance; that the defendant was on the porch of the house accompanied by his wife and small children; that the defendant, upon seeing his brothers Juan Bautista and Julio enter the plantation, addressed insulting remarks to them, and immediately fired a shot at Juan Bautista Chardón, whose back was turned while he was inspect-

ing the pipes, his brother Julio being in front of him at a distance of some ten paces; that the bullet struck the pipe and the fragments thereof penetrated Juan Bautista's left leg; that then Juan Bautista and his brother started to leave the plantation and when they were nearing the entrance, the defendant fired a second shot which struck Juan Bautista in the leg causing him to fall head long; that Juan Bautista was confined in the hospital for twelve or thirteen days, being forced to leave because of lack of funds. The rifle was offered in evidence, having been turned over to the police by the defendant himself at the time of the investigation. He also turned over several bullets that he said pertained to that rifle, which was a 22–calibre rifle.

The defendant, Rodolfo Chardón, testified that he had quarreled with his family, and that Juan Bautista and Julio Chardón had threatened to kill him and "blow his brains out"; that the defendant was living on a plantation belonging to his brothers and his father-in-law, Mr. Matías Vidal, and that he has no interest whatsoever in the said plantation; that on the morning of March 21st, Juan Bautista Chardón and Julio Chardón arrived at the entrance of his house, and when the defendant asked them what were they looking for they answered, the pipes; that the defendant told them to leave the pipes there, that they belonged to the estate, and that they had taken the pump and had appropriated a house worth $3000; that they all began to insult one another heatedly, and that the defendant had said the same things that the others said and perhaps worse; that Juan Bautista Chardón told him that he was determined to take the pipes, and to get the children away because he was going to kill him; that the defendant fired a shot to see if they would leave; that Juan Bautista took out a revolver and made some insulting remarks, and that then the defendant fired again wounding his brother; that Juan Bautista did not fire because the defendant had his small children by his side.

It is sufficient to read the testimony of the witnesses for both sides to conclude that the lower court did not commit the errors assigned. According to the evidence for the prosecution, the defendant started the insults and later committed the assault by firing his rifle. According to the witnesses for Rodolfo Chardón, it was the person assaulted who began the provocation; but the defendant himself, in his testimony, tells us that he initiated both the provocation and the assault. Rodolfo Chardón himself confesses to having said to his brothers that the pipes belonged to the estate; that they had taken the pump, and had appropriated a house worth $3000. He adds that they were all excited and that perhaps the defendant used even stronger words than his brothers did. The testimony of the witnesses for the defense agree in the other particulars with the testimony of the defendant. The lower court declared that in its estimation the evidence for the defense was unworthy of belief and added, very properly, that even had the defendant been provoked, he would not have been justified in firing the shots that wounded his own brother. The court further said that it doubts very much whether the person assaulted had a revolver in his hand, as the witnesses for the defense testified, because his right hand was examined and found to be useless. The conclusions of the lower court are logical and reasonable and are based on the evidence adduced.

As to the weapon offered in evidence, the court said that it had taken judicial notice of its deadly character, and that the same could cause serious bodily injury and even death. The defendant maintains that the deadly character of the weapon should be proved, and in support of this contention he cites the cases of People v. Rivas, 16 P.R.R. 581, and People v. Oriols, 27 P.R.R. 195. The definition of a deadly weapon does not favor the defendant's contention. According to the cases cited, a weapon is deadly when it is capable of causing death or producing serious bodily injury, and when the weapon has been identified, the question of whether or not

it is a deadly weapon is one of law, and no evidence is necessary, unless there is some doubt as to the kind of weapon employed, or unless the fact as to whether or not it is a deadly weapon depends upon the manner in which it is used, in which case evidence should be presented.

In the instant case the weapon was identified. It was a 22-calibre rifle with lead bullets, which the defendant fired at his brother, Juan Bautista Chardón, wounding him in the leg. The lower court did not err in estimating the deadly character of the weapon used to commit the assault. It is obvious that serious bodily injury could be inflicted with said weapon. It is precisely in cases like the present one where evidence is unnecessary, according to the decisions of this Court cited by the defendant himself.

Lastly, it is contended that the punishment is excessive. We do not think so. The evidence for the prosecution, which the court fully believed, and even the testimony of the defendant himself, show that the latter unnecessarily fired on one of his brothers, after insulting both of them and accusing them of the theft of a farm. It is sufficient to examine the evidence to reach the conclusion that the court, far from imposing an excessive punishment, was very moderate in exercising its discretion.

The judgment appealed from must be affirmed.